Argued and submitted July 8, 1992, reversed and remanded with instructions and
for further proceedings April 14, 1993

In the Matter of
Vanisha Shuey, a Minor Child.

## STATE ex rel JUVENILE DEPARTMENT
## OF LANE COUNTY,
*Respondent,*

*v.*

## Terra SHUEY,
*Respondent,*

*and*

## CONFEDERATED TRIBES OF
## THE GRANDE RONDE COMMUNITY
## OF OREGON,
*Proposed Intervenor-Appellant.*

(90 368; CA A72174)

850 P2d 378

Edmund J. Goodman, Native American Program, Oregon Legal Services, Portland, argued the cause and filed the brief for proposed intervenor-appellant.

Harrison Latto, Assistant Attorney General, Salem, waived appearance for respondent Juvenile Department of Lane County.

Susan A. Schmerer, Eugene, waived appearance for minor child.

No appearance for respondent Terra Shuey.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

Warren, P. J., dissenting.

## RIGGS, J.

The Confederated Tribes of the Grand Ronde Community of Oregon (the Grand Ronde) appeal from the trial court's denial of its motion to intervene in a child custody proceeding involving a child who is an enrolled member of the tribe. The motion was denied because it was not signed by an attorney. In this case of first impression, we reverse and remand.

The Grand Ronde filed a motion to intervene in proceedings by the Children's Services Division (CSD) to remove an Indian child from her mother's custody. The motion was pursuant to § 101(c) of the Indian Child Welfare Act (ICWA), which provides:

"In any State court proceeding for foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding." 25 USC § 1911(c).

The trial court denied the motion *sua sponte*, because it was not signed by an attorney as required by ORS 9.160[1] and ORS 9.320.[2]

The Grand Ronde retained legal counsel and filed a motion to reconsider that ruling and a request for oral argument. The intervention issue was briefed and argued to the trial court. After oral argument, the trial court issued an order denying the motion to reconsider and the underlying motion to intervene, again because the underlying motion was not signed by an attorney. We review for errors of law.

■■ Whether state law is preempted by federal law is a question of law. *See Best v. U.S. National Bank*, 303 Or 557, 739 P2d 554 (1987). In state/tribal matters, the standard for preemption is much lower than in other contexts:

---

[1] ORS 9.160 provides that "no person shall practice law * * * unless that person is an active member of the Oregon State Bar."

[2] ORS 9.320 provides:

"Any action, suit, or proceeding may be prosecuted or defended by a party in person, or by attorney, except that the state or a corporation appears by attorney in all cases * * *."

> "Although a State will certainly be without jurisdiction if its authority is pre-empted under familiar principles of pre-emption, we caution * * * that our prior cases d[o] not limit pre-emption of state laws affecting Indian tribes to only those circumstances. 'The unique historical origins of tribal sovereignty' and the federal commitment to tribal self-sufficiency and self-determination make it 'treacherous to import * * * notions of pre-emption that are properly applied to * * * other [contexts].'.* * * By resting pre-emption analysis principally on a consideration of the nature of the competing interests at stake, our cases have rejected a narrow focus on congressional intent to pre-empt state law as the sole touchstone. * * * State jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority. * * *

> "Certain broad considerations guide our assessment of the federal and tribal interests. The traditional notions of Indian sovereignty provide a crucial 'backdrop' * * * against which any assertion of state authority must be assessed." *New Mexico v. Mescalero Apache Tribe*, 462 US 324, 334, 103 S Ct 2378, 76 L Ed 2d 611 (1983). (Citations omitted.)

When a state law "interferes or is incompatible with federal and tribal interests," the Supreme Court requires balancing tribal and state interests. 462 US at 334. Here, we must first determine whether the requirement that a tribe be represented by an attorney in ICWA proceedings "interferes or is incompatible with" the tribe's right to intervene and its interest in its children. If we find an interference or incompatibility, then we must balance the competing state and tribal interests.

The Grand Ronde persuasively argues that enforcement of the statutory representation requirement will not only burden the right of tribal intervention, it will essentially deny that right in many cases. Although most tribes are entitled to and do receive federal grants for child and family services, those funds cannot be used for legal representation or for legal fees for litigation. *See, e.g.*, 25 USC § 1931(a)(8); 25 CFR §§ 89.40-41. Other federal moneys for social services are similarly restricted: They cannot be used to pay for legal services for litigation. 25 USC §§ 450 *et seq*. The Grand Ronde also presented evidence that the federal government has

completely regulated and has direct oversight of how tribes can retain legal counsel, and who they can retain as counsel. *See* 25 USC §§ 81, 81a; 25 CFR Part 89. Because of those economic and procedural barriers to obtaining legal representation, we conclude that enforcement of ORS 9.160 and ORS 9.320 in this case interferes and is incompatible with the federally granted tribal right and the tribal interests in intervening in such proceedings.

The next question is whether the state interest in enforcement of the representation requirement in ICWA proceedings outweighs tribal interests in intervening in such proceedings. The state's interest in requiring groups and associations to be represented by an attorney is legitimate. ORS 9.160 and ORS 9.320 assure that those appearing in judicial proceedings are familiar with substantive and procedural requirements and protocols, thus assuring adequate representation. Although the Oregon Supreme Court recently ruled that those statutes require that "only an individual human being can appear 'in person,' " it did not consider the ICWA or any other federal law that may require a different result. *Oregon Peaceworks Green, PAC v. Sec. of State*, 311 Or 267, 271, 810 P2d 836 (1991). Although the interests represented by the statutes are substantial, those interests are not so substantial as to outweigh a tribe's interests in its children.

Congress passed the ICWA in response to the alarmingly high number of Indian children being removed from their families and placed in non-Indian adoptive or foster homes by state welfare agencies and courts. At the time of its enactment, 25 to 35 percent of all Indian children were separated from their families and placed in adoptive or foster homes, 90 percent of which were non-Indian. Conservative estimates were that the rate of adoptive or foster home placement for Indian children was at least five times greater than the rate for non-Indian children. Congress found

"that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe," 25 USC § 1901(3),

and

"that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 USC § 1901(5).

The ICWA's policy is

"to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 USC § 1902.

According to the House Report that accompanied the ICWA through Congress, the procedural and substantive standards set by the ICWA were intended to make "sure that Indian child welfare determinations are not based on 'a white, middle-class standard which, in many cases, forecloses placement with [an] Indian family.' " *Mississippi Choctaw v. Holyfield*, 490 US 30, 37 109 S Ct 1597, 104 L Ed 2d 29 (1989), *quoting* HR Rep No 95-1386, 2d Sess. 24, *reprinted in* US Code Cong & Adm News 7530, 7546 (1978). Many state courts have concluded that the tribal interests articulated in the ICWA are of the highest order. For example, after quoting the congressional findings that prompted the passage of the ICWA and the ICWA policy sections, the Supreme Court of Utah said:

"The broad grant of jurisdiction to tribes and the narrowing of state court authority were aimed at preventing these perceived evils. The importance of tribal primacy in matters of child custody and adoption cannot be minimized, for the ICWA is grounded on the premise that tribal self-government is to be fostered and that few matters are of more central interest to a tribe seeking to preserve its identity and traditions than the determination of who will have the care and custody of its children." *Matter of Adoption of Holloway*, 732 P2d 962, 965 (Utah 1986). (Citations omitted.)

The Utah court concluded that "[t]he protection of th[e] tribal interest [in its children] is at the core of the ICWA." 732

P2d at 969. We agree with those conclusions. The state's interest in requiring attorney representation is not as substantial as the tribal interests in participating in ICWA proceedings. The state's interest in adequate representation and compliance with procedure and protocol in general cannot compare with a tribe's interests in its children and its own future existence. Also, in the narrow context of ICWA proceedings, the state interests are not compromised. The Grand Ronde, and other tribes generally, appear in child-custody proceedings in state court through its Director of Social Services, whose job includes overseeing child-custody issues for tribal members. That necessarily requires intimate familiarity with the procedural and substantive requirements of the ICWA, and with the procedures and organizations of other social service agencies.

Tribal participation in state custody proceedings involving tribal children is essential to effecting the purposes of the ICWA. The state interests represented by ORS 9.160 and ORS 9.320 are outweighed by those purposes and the tribal interests that they represent. With the applicable preemption test weighted in favor of tribal interests, the state requirement of representation by an attorney is preempted in the narrow context of these ICWA proceedings.

Reversed and remanded with instructions to grant the motion to intervene, and for further proceedings.

**WARREN, P. J.,** dissenting.

Because I disagree that the state is precluded from requiring compliance with its procedural statutes in this case, I dissent.

The majority is correct that ICWA grants Indian tribes a substantive right to intervene in a child custody proceeding involving an Indian child and that ICWA preempts the state from enforcing any law that would deny that substantive right. It is also correct that federal law preempts any conflicting state law that affects its substantive rights under ICWA. However, when the state law is solely procedural in nature and does not affect or limit the substance of a federal right, then no preemption occurs. *Nutbrown v. Munn*, 311 Or 328, 811 P2d 131 (1991), *cert den* ___ US ___ (112 S Ct 867) (1992); *Marr v. Smith Barney, Harris Upham*

*& Co., Inc.*, 116 Or App 517, 842 P2d 801 (1992), *rev den* 315 Or 442 (1993).

ORS 9.160 provides that "no person shall practice law * * * unless that person is an active member of the Oregon State Bar." ORS 9.320 provides:

> "Any action, suit, or proceeding may be prosecuted or defended by a party in person, or by attorney, except that the state or a corporation appears by attorney in all cases * * *."

In general, the forum state applies its own conflicts of law rules to determine whether the question is one of substance or procedure. *Hust v. Moore-McCormick Lines, Inc.*, 180 Or 409, 424, 177 P2d 429 (1947). However, a state cannot apply its own law to limit the rights that a party has under a federal claim, even when that claim is asserted in a state court. *Rogers v. Saylor*, 306 Or 267, 284, 760 P2d 232 (1988). Because the ICWA gives an Indian tribe a right to intervene in state court proceedings, we must decide whether applying ORS 9.160 and ORS 9.320 would deny the tribe a right granted it by federal law.

25 USC § 1911(c) provides:

> "In any State court proceeding for foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding."

ORS 9.160 and ORS 9.320 do not deny the tribe's right to intervene in this proceeding, but affect only how the intervention shall occur.

We decided a similar issue in *Cooley v. Fredinburg*, 114 Or App 532, 836 P2d 162 (1992), *rev den* 315 Or 311 (1993). In that case, we held that the failure of the Federal Deposit Insurance Corporation to assert and establish its lien in a foreclosure proceeding precluded it from redeeming the property under ORS 23.530(2). 28 USC § 2410(c) provides for an absolute right on the part of the United States to have one year from the date of sale within which to redeem. We said:

> "Although 28 USC § 2410(c) requires Oregon to permit redemption by the government within 1 year from the date of sale, nothing entitles the government, or anybody else, to

redeem when it has failed to follow the state procedures that would have permitted it to protect itself." 114 Or App at 538.

Similarly, the tribe retains its substantive right to intervene so long as it complies with the state's procedures for intervention. I would hold that the trial court did not err when it ruled that the tribe's motion to intervene was defective because it did not comply with the requirements of ORS 9.160 and ORS 9.320.

I dissent.