# IN THE SUPREME COURT OF IOWA

No. 20 / 07–0123

Filed June 13, 2008

**IN THE INTEREST OF N.N.E.,**

Minor Child,

**TYME MADIU TRIBE OF THE BERRY CREEK RACHERIA,**

Appellant.

---

Appeal from the Iowa District Court for Woodbury County, Mary Jane Sokolovske, Judge.

Tribe contends the juvenile court erred by not following the Indian Child Welfare Act placement preferences after a voluntary termination of parental rights. **REVERSED AND REMANDED.**

Rosalynd J. Koob of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, and Elizabeth A. Rosenbaum, Sioux City, for appellant.

Martha A. McMinn, Sioux City, for appellee-Maxine Buckmeier.

Suzan E. Boden of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Ross, L.L.P., Sioux City, for appellee-mother.

David L. Gill, Sioux City, for appellee-GAL.

**STREIT, Justice**.

Shannon, an Iowa resident, is a member of a federally recognized Indian tribe located in California. She became pregnant and decided to give the child up for adoption. She chose a non-Indian family from Arizona to adopt her child. Because her child is eligible for membership in the tribe, the federal and Iowa Indian Child Welfare Acts (ICWA) apply to the child custody proceedings. On appeal, the tribe contests the preadoptive placement of the child with the prospective adoptive family rather than an Indian family in accordance with Iowa ICWA placement preferences. Because we find the Iowa ICWA placement preferences unconstitutional, the federal ICWA placement preferences, which include a "good cause" exception for a parent's request, govern. We remand for the court to determine whether good cause exists to deviate from the federal ICWA placement preferences.

### I. Facts and Prior Proceedings.

Shannon lived in Sioux City, Iowa. In late 2005, she became pregnant. She was approximately twenty years old, unmarried, and the mother of two other children. Shannon decided she was unable to care for an additional child and chose to give the child up for adoption. Shannon was referred to Maxine Buckmeier, an adoption attorney in Sioux City. With Buckmeier's help, Shannon chose Jena and Paul, an Arizona couple, to adopt the child. Buckmeier assumed the role of Jena and Paul's attorney.

Shannon is an enrolled member of the Tyme Maidu Tribe of the Berry Creek Rancheria, which is located in California. Terilynn Steele, the tribe's ICWA program director, informed Buckmeier Shannon's unborn child would be eligible for tribe enrollment.

Shannon gave birth to Nairobi on June 6, 2006. She named two men as possible fathers. On June 9, Shannon signed a release which gave custody of Nairobi to Buckmeier. The stated purpose was "to permit [Buckmeier] to file a petition in juvenile court for the termination of [Shannon's] parental rights . . . ." Buckmeier gave Nairobi to Jena and Paul who have cared for the child since June 9. Buckmeier filed the petition to terminate Shannon's parental rights on June 16. The same day, the juvenile court appointed Buckmeier to serve as Nairobi's custodian.

Jena and Paul told Steele the child was in their care, and a court hearing was scheduled for June 19. Shannon was scheduled to appear in the district court to give her consent to the release of custody and termination of her parental rights for purposes of furthering the adoption. Steele stated such a hearing could not take place because Buckmeier had not formally notified the tribe of the hearing.

On June 19, Shannon appeared before the district court and presented the court with her "Consent to Termination of Parental Rights Pursuant to the Indian Child Welfare Act," which the court certified. It included the following statement:

> I have the right under the Indian Child Welfare Acts to require that the placement preferences of these Acts be followed. I request that my child not be placed with my extended family, but with the family that I have selected who is non-Native American. I understand that the Tyme Maidu Tribe may or may not grant my request.

The following day, Buckmeier sent to the tribe by certified mail, a notice explaining the tribe's rights in the proceedings and the date of the next scheduled hearing (July 27). Included with the notice was a copy of

the petition which noted Nairobi had been "in the possession and control of the prospective adoptive parents" since June 9.

On July 25, the tribe filed a motion to intervene and request for continuance. Shannon, Suzan Boden (Shannon's attorney), Buckmeier, and the child' s guardian ad litem all appeared before the court on July 27. The court granted the tribe's motion to intervene and continued the hearing until August 30 in order for the tribe to investigate the proposed adoptive placement of the child. *See* 25 U.S.C. § 1911(*c*) (2006) (granting an Indian child's tribe the right to intervene); Iowa Code § 232B.5(14) (2005) (same).

On the day before the August 30 hearing, the tribe faxed to the court and the parties a copy of an August 11 tribal resolution which stated among other things (1) Nairobi was eligible for membership in the tribe, (2) its belief ICWA had been violated because "a custody proceeding occurred without notice to the Tribe," (3) its intent to exercise its right to preferred placement if Shannon relinquishes her parental rights, and (4) its appointment of Steele as the tribe's representative. The court continued the hearing until November 1 in order for the parties to explore their legal options in light of the tribe's resolution.

On November 1, a hearing was held before the juvenile court. Buckmeier and Boden (Shannon's attorney) objected to Steele appearing telephonically. Buckmeier noted the tribe had plenty of time to retain counsel and appear on the date of the hearing. The guardian ad litem took the position Steele should not be allowed to present evidence because she was not a lawyer. Steele requested a continuance in order to appear by person. She stated it was the tribe's position Nairobi should not have been removed from the state of Iowa without prior notice to the

tribe because such placement constituted foster care or a preadoptive placement.

After noting the only issue before it was termination of Shannon's parental rights and not the adoptive placement, the juvenile court denied Steele's motion to continue, allowed her to stay on the telephone but prohibited her from presenting any evidence. Shannon testified she was consenting to the termination of her rights.

On November 20, prior to the juvenile court's ruling, the tribe issued a subpoena seeking the Interstate Compact on Placement of Children (ICPC) records for Nairobi. Buckmeier moved to quash the subpoena and a hearing was set for December 12. On November 22, the tribe filed a motion to vacate the June 16 custody order, terminate the ICPC removal, and return the child to Iowa or place the child with a tribe-approved family.

The juvenile court entered an order on December 26 terminating the parental rights of Shannon and the putative fathers. It found the court's September 1 order notified the tribe that participation in the November 1 hearing "was to be done by appearing in person and with legal counsel" and that the tribe had not made a timely request to appear by telephone. The court further ordered Buckmeier to continue to serve as Nairobi's guardian and custodian.

On January 17, 2007, the tribe filed a notice of appeal from the termination order. On the same date, the tribe filed a motion requesting the juvenile court to rule on Buckmeier's motion to quash. It also refiled its motion to vacate the custody order.

The next day, the juvenile court issued an order finding Buckmeier met the requirements of Iowa Code chapter 600A and all state and federal ICWA requirements. The court also found the tribe's motion to

vacate and its subpoena seeking ICPC records were moot due to the December 26 order terminating the mother's parental rights.

On January 19, the tribe amended its notice of appeal to challenge the termination order and the appointment of Buckmeier as guardian and custodian.

On appeal, the tribe argues (1) the juvenile court erred when it found the parental rights termination proceedings were conducted in compliance with the state and federal ICWA; (2) the juvenile court erred when it held the tribe had to be represented by legal counsel; (3) the juvenile court erred when it overruled the tribe's motion to participate telephonically; (4) the juvenile court erred when it permitted Gerald Denney to testify at the termination hearing when he was not timely disclosed as a witness and was not qualified as an ICWA expert; and (5) the juvenile court erred when it held the tribe's motion to vacate and Buckmeier's motion to quash the tribe's subpoena were mooted by the court's order terminating Shannon's parental rights. The tribe requests we reverse all of the orders of the juvenile court except the order permitting it to intervene.

The appellees—Buckmeier, Shannon, and David Gill (the child's guardian ad litem)—contend the juvenile court fully complied with both the federal and Iowa ICWA. In the alternative, they contend the Iowa ICWA is unconstitutional to the extent it allows a tribe to interfere with a private adoption.

## II.    Scope of Review.

The standard of review in juvenile proceedings is de novo. *In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996). We review statutory interpretations for correction of errors of law. *In re R.E.K.F.*, 698 N.W.2d 147, 149 (Iowa 2005). Evidentiary rulings and rulings on motions are

generally reviewed for abuse of discretion. *In re E.H. III*, 578 N.W.2d 243, 245 (Iowa 1998). Constitutional challenges to a statute are reviewed de novo. *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008).

### III. Merits.

Congress passed the Indian Child Welfare Act in 1978. *See* 25 U.S.C. §§ 1901–1963. The legislation

> was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.

*Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S. Ct. 1597, 1600, 104 L. Ed. 2d 29, 36 (1989); *see also* 25 U.S.C. § 1901 (providing congressional findings including "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and . . . placed in non-Indian foster and adoptive homes and institutions"). ICWA established "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which . . . reflect the unique values of Indian culture . . . ." 25 U.S.C. § 1902.

Congress envisioned a patchwork of laws to protect Indian children and their families. The federal ICWA provides:

> In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.

*Id.* § 1921.

Iowa passed its own ICWA in 2003. *See* Iowa Code §§ 232B.1–232B.14. The stated purpose was "to clarify state policies and procedures regarding implementation of the federal Indian Child Welfare Act." *Id.* § 232B.2. The Iowa ICWA also extends additional rights to tribes.

The present case tests the applicability of both the federal and Iowa ICWA to the voluntary termination of parental rights of an Indian child. The tribe alleges "blatant violations" of both Acts require this case be remanded to the juvenile court for proceedings in compliance with ICWA.

ICWA applies to child custody proceedings involving an Indian child. *Id.* § 232B.4(1). An "Indian child" is an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); *see In re A.W.*, 741 N.W.2d 793, 810 (Iowa 2007) (holding Iowa ICWA's definition of "Indian child" found in Iowa Code § 232B.3(6) was unconstitutional because it included ethnic Indians who were not eligible for tribal membership and thus constituted a racial classification which was not narrowly tailored to further a compelling government interest). A "child custody proceeding" is "a voluntary or involuntary proceeding that may result in an Indian child's adoptive placement, foster care placement, preadoptive placement, or termination of parental rights." Iowa Code § 232B.3(3); *see* 25 U.S.C. § 1903(1) (defining "child custody proceeding" in a similar manner). The parties agree Nairobi is an "Indian child." However, they disagree on when the first "child custody proceeding" took place.

**A. ICWA Placement Preferences.** The crux of the tribe's appeal is that it should have been given notice before custody of Nairobi

was transferred to Buckmeier in order for the tribe to assert its right to preferred placement under the Iowa ICWA. Thus, we begin by analyzing the provisions for placement preferences under federal and Iowa ICWA.

The federal ICWA statute provides:

> In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families.

25 U.S.C. § 1915(a). The statute provides similar placement preferences for foster care or preadoptive placements, which can likewise be circumvented for "good cause." *Id.* § 1915(b). "Good cause" is not defined in the statute but the Bureau of Indian Affairs issued nonbinding guidelines to assist state courts in applying the federal ICWA. In determining whether good cause exists to deviate from the placement preferences, the guidelines state:

> (a) For purposes of foster care, preadoptive or adoptive placement, a determination of good cause not to follow the order of preference . . . shall be based on one or more of the following considerations:
>
>> (i) The request of the biological parents or the child when the child is of sufficient age.
>>
>> (ii) The extraordinary physical or emotional needs of the child as established by testimony of a qualified expert witness.
>>
>> (iii) The unavailability of suitable families for placement after a diligent search has been completed for families meeting the preference criteria.
>
> (b) The burden of establishing the existence of good cause not to follow the order of preferences . . . shall be on the party urging that the preferences not be followed.

Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,583, 67,594 (Nov. 26, 1979). Previously, we have said:

> "[G]ood cause" for deviating from the § 1915(b) preferences depends on a fact determinative analysis consisting of "many factors including, but not necessarily limited to, the best interests of the child, the wishes of the biological parents, the suitability of persons for placement, and the child's ties to the tribe."

*In re A.E.*, 572 N.W.2d 579, 585 (Iowa 1997) (quoting *In re Adoption of F.H.*, 851 P.2d 1361, 1363-64 (Alaska 1993)). Courts in other jurisdictions have found good cause to deviate from the placement preferences where the parent in a voluntary termination case expressed a desire to place her child with a non-Indian family. *See In re Adoption of Keith M.W.*, 79 P.3d 623, 630–31 (Alaska 2003); *In re Adoption of T.R.M.*, 525 N.E.2d 298, 313 (Ind. 1988); *In re Adoption of B.G.J.*, 133 P.3d 1, 10 (Kan. 2006).

However, a parent's request is not sufficient to deviate from the preferred placements under the Iowa ICWA. Iowa Code section 232B.9(1) states:

> In any adoptive or other permanent placement of an Indian child, preference shall be given to a placement with one of the following, in descending priority order:
>
> a. A member of the Indian child's family.
>
> b. Other members of the Indian child's tribe.
>
> c. Another Indian family.
>
> d. A non-Indian family approved by the Indian child's tribe.
>
> e. A non-Indian family that is committed to enabling the child to have extended family visitation and participation in the cultural and ceremonial events of the child's tribe.

The Iowa statute provides similar preferences for emergency removal, foster care, and preadoptive placement. Iowa Code § 232B.9(2). The tribe also has the discretion to establish a different order of placement preferences. *Id.* § 232B.9(5). The statute further states:

> Unless there is clear and convincing evidence that placement within the order of preference . . . would be harmful to the Indian child, consideration of the preference of the Indian child or parent or a parent's request for anonymity shall not be a basis for placing an Indian child outside of the applicable order of preference.

*Id.* § 232B.9(6).

We find such a high burden to deviate from the placement preferences in a voluntary termination violates substantive due process. Parents' interest in their children's care, custody, and control is " 'perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court].' " *Santi v. Santi,* 633 N.W.2d 312, 317 (Iowa 2001) (quoting *Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49, 56 (2000)). This court has recognized a fundamental right to parent under the Iowa Constitution. *Id.* at 316 (referring to article I, sections 1 and 9 of the Iowa Constitution). "[T]o withstand challenge under our state constitution, the infringement on parental liberty interests implicated by the statute must be 'narrowly tailored to serve a compelling state interest.' " *Id.* at 318 (quoting *State v. Klawonn,* 609 N.W.2d 515, 519 (Iowa 2000)).

The Supreme Court explained why the federal ICWA was enacted: "Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians." *Holyfield,* 490 U.S. at 49, 109 S. Ct. at 1608–09, 104 L. Ed. 2d at 47. Assuming survival of the tribe is a compelling state interest, the Iowa ICWA preferred placement provisions as they apply to voluntary termination of parental rights violate due process because they are not narrowly tailored. The statute makes the rights of a tribe paramount to

the rights of an Indian parent or child even where, as in this case, the parent who is the tribal member has no connection to the reservation and has not been deemed unfit to parent.[1]  *See In re Baby Girl A.*, 282 Cal. Rptr. 105, 111 (Cal. Ct. App. 1991) (holding tribe's interest in voluntary adoption of child living off the reservation is not as great as parent's interest).  Shannon's fundamental right to make decisions concerning the care of her child is not lessened because she intended to terminate her rights to Nairobi.  In fact, under Iowa ICWA, Shannon had an absolute right to withdraw her consent to terminate her parental rights at any time before the entry of a final decree of termination and the child would have been returned to her.  Iowa Code § 232B.7(3).  Shannon was faced with an unintended pregnancy.  A woman in her position has three choices: to keep the child, put the child up for adoption, or terminate the pregnancy.  Such a decision is undoubtedly gut wrenching and will forever impact her as well as the unborn child.  The State has no right to influence her decision by preventing her from choosing a family she feels is best suited to raise her child.[2]  Moreover, we do not believe the federal ICWA condones state law curtailing a parent's rights in this manner.  Federal ICWA instructs courts to apply whatever law "provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child."  25 U.S.C. § 1921.  It says nothing about laws providing a higher standard of protection to the tribe.  While providing additional rights to the tribe is the prerogative of

---

[1] Shannon testified she does not have contact with anyone who lives on the reservation.  She stated if she raised Nairobi, she would not expose the child to the tribe's culture or customs.  It is not clear whether Shannon has ever lived on the reservation in California.

[2] Shannon certainly does not have an unfettered discretion to choose the adoptive family.  The placement must be in the child's best interest. *See* Iowa Code § 600.8, 600.13(1)(*d*).

the State, those rights may not come at the expense of the parent's or child's rights.

Because we find the Iowa ICWA placement preferences violate our state constitution when applied to a voluntary termination of parental rights, the federal ICWA placement preferences apply. In order to deviate from the federal placement preferences, the juvenile court was required to make specific findings supporting good cause. *See In re A.E.*, 572 N.W.2d at 585. Because the juvenile court did not make such findings, we remand in order for the appellees to have the opportunity to establish the existence of good cause not to follow the placement preferences in the preadoptive placement of Nairobi. *See* Iowa Code § 232B.3(13) (defining "preadoptive placement" to mean the "temporary placement of an Indian child . . . after the termination of parental rights, but prior to or in lieu of an adoptive placement").

The tribe requests we reverse all orders of the juvenile court except the order allowing the tribe to intervene. In other words, the tribe wishes to have the opportunity to also contest the foster care placement of Nairobi—i.e., the placement of Nairobi prior to the termination of Shannon's parental rights. Iowa Code section 232B.14(2)(*h*) states "[a] court of competent jurisdiction shall vacate a court order and remand the case for appropriate disposition for . . . [a]ny other violation that is not harmless error, including but not limited to a failure to comply with 25 U.S.C. . . . § 1915 . . . ."

We find such a remedy unnecessary in light of the fact Shannon has never wavered in her decision to terminate her parental rights since her first court appearance.[3] It would serve no purpose to require the

---

[3] We disavow *In re J.W.*, 498 N.W.2d 417, 419–20 (Iowa Ct. App. 1993), to the extent it held failure to give adequate notice to a tribe divests the court of jurisdiction to terminate parental rights.

juvenile court to terminate her parental rights all over again. Although we state below the tribe was entitled to notice before the foster care placement was made, we cannot undo what has already been done. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Any error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order."). Nairobi deserves a permanent home as soon as possible. Thus, once the juvenile court determines preadoptive placement, Nairobi's adoption may follow. We now turn to the other issues raised by the tribe.

**B.    Notice.**

The tribe also complains it did not receive proper notice of the first "child custody proceeding." Iowa ICWA provides:

> In a voluntary child custody proceeding involving an Indian child, . . . the court shall establish in the record that the party seeking the foster care placement of, termination of parental rights to, or the permanent placement of, an Indian child has sent notice at least ten days prior to the hearing by registered mail, return receipt requested, to all of the following:
> . . .
> c. Any tribe in which the child may be a member or eligible for membership.

*Id.* § 232B.5(8). *But see* 25 U.S.C. § 1912(*a*) (requiring notice to tribe only in an involuntary proceeding). " 'Child custody proceeding' means a voluntary or involuntary proceeding that may result in an Indian child's adoptive placement, foster care placement, preadoptive placement, or termination of parental rights." Iowa Code § 232B.3(3). The notice shall include, among other things, "[a] copy of the petition by which the proceeding was initiated" and inform the tribe of its "right to intervene in the proceeding." *Id.* § 232B.5(9).

The tribe contends the first "child custody proceeding" for which it was entitled to notice occurred on June 9 when Shannon signed the "release of custody" transferring custody of Nairobi to Buckmeier. However, the act of signing a "release of custody" does not constitute a "child custody proceeding." The release was obviously the first step toward terminating Shannon's parental rights to the child. *See Id.* § 600A.4(2)(*j*) (stating release of custody shall be followed by the filing of a petition for termination of parental rights). Nevertheless, there was no proceeding at this point. By referencing a "petition" and the "right to intervene in the proceeding," the legislature clearly intended to trigger the tribe's right to notice upon the filing of a petition to terminate Shannon's parental rights rather than when she signed the "release of custody." *See also Black's Law Dictionary* 1241 (8th ed. 2004) (defining a proceeding as a "hearing" before "a court or other official body" or "[a]ny procedural means for seeking redress from a tribunal or agency"). Thus, the tribe was not entitled to notice before Shannon signed the "release of custody."

The tribe also contends a "child custody proceeding" occurred on June 16 which entitled it to notice. On June 16, Buckmeier filed her petition to terminate Shannon's parental rights and obtained an order appointing Buckmeier as Nairobi's custodian. Shannon appeared before the juvenile court on June 19 and voluntarily consented to the termination of her parental rights as well as the release of custody of Nairobi to Buckmeier.[4] The tribe contends the June 16 order resulted in a "foster care placement" which required Buckmeier to send the tribe

---

[4] Contrary to the tribe's assertion, we find Shannon's initial consent to terminate her parental rights was valid. Her written consent, executed more than ten days after Nairobi's birth, was filed along with a written verification by the juvenile court which certified Shannon's decision was voluntary and fully informed. *See* 25 U.S.C. § 1913(*a*); Iowa Code § 232B.7(1).

notice at least ten days beforehand. *See* Iowa Code § 232B.5(8) (requiring the party seeking foster care placement of Indian child to send notice at least ten days prior to the hearing).

> "Foster care placement" means the temporary placement of an Indian child in an individual or agency foster care placement or in the personal custody of a guardian or conservator prior to the termination of parental rights, from which the child cannot be returned upon demand to the custody of the parent or Indian custodian but there has not been a termination of parental rights.

*Id.* § 232B.3(4).

Shannon argues the June 16 order did not result in a "foster care placement" because Nairobi could have been returned to her upon demand. She notes Iowa Code section 232B.7(3) states:

> In a voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, *and the child shall be returned to the parent.*

(Emphasis added.) Although this provision allows a parent to reclaim an Indian child for any reason up to the voluntary termination of parental rights, we do not interpret it to mean a child shall be returned upon demand. A parent choosing to withdraw his or her consent would have to petition the court and formally withdraw the consent before the child would be returned to the parent. *See* Guidelines, 44 Fed. Reg. at 67,594 (stating withdrawing consent requires filing an instrument executed under oath by parent stipulating intention to withdraw consent). We agree with the tribe the June 16 order resulted in a foster care placement which required Buckmeier to send the tribe notice ten days beforehand.

Buckmeier did not mail the tribe notice until June 20. The tribe claims the lack of formal notice ten days before the court appointed

Buckmeier as custodian deprived the tribe of the opportunity to meaningfully participate in the proceedings and "advise the court that there were ICWA preferred placements available within the Tribe." The tribe claims all orders filed before it received notice should be vacated. *See id.* § 232B.14(2)(*a*) (stating "[a] court of competent jurisdiction shall vacate a court order and remand the case for appropriate disposition for . . . failure to notify an Indian parent, Indian custodian, or Tribe"). As we have already stated, such action is not necessary. On remand, the tribe will be given the opportunity to be heard regarding Nairobi's preadoptive placement.

**C. Pro se representation.** The tribe complains the juvenile court erred by preventing Steele to act as a non-lawyer representative of the tribe at the November 1 hearing. The federal and state ICWA are silent on whether the tribe may appear in court through a non-lawyer representative. As a general rule, Iowa requires businesses to appear only by lawyer, while a natural person may appear for himself. *Hawkeye Bank & Trust v. Baugh*, 463 N.W.2d 22, 25 (Iowa 1990). Whether a tribe may represent itself in court is an issue of first impression. For the reasons that follow, we believe a tribe should be permitted to represent itself in ICWA proceedings. We need not determine whether such a right should extend to other types of cases.

The court of appeals of Oregon addressed this issue in *State ex rel. Juvenile Department of Lane County v. Shuey*, 850 P.2d 378 (Or. Ct. App. 1993). There, the court found Oregon's statute requiring groups and associations be represented by a lawyer was incompatible with the tribe's right to intervene in ICWA cases. *Shuey*, 850 P.2d at 381. It stated "[t]ribal participation in state custody proceedings involving tribal children is essential to effecting the purposes of the ICWA." *Id.* Because

"[t]he state's interest in adequate representation and compliance with procedure and protocol in general cannot compare with a tribe's interests in its children and its own future existence," the court found the tribe may represent itself in ICWA proceedings. *Id.* We agree.

Moreover, tribes are inherently different than business organizations. *Fraas Survival Sys. Inc. v. Absentee Shawnee Econ. Dev. Auth.*, 817 F. Supp. 7, 10 (S.D.N.Y. 1993). "[A]n Indian tribe's status is a distinctive combination of sovereignty and dependency–it is at once an independent nation and a ward of the state." *Id.* The "tribe's status as a partially sovereign nation merits respect based on an expectation of responsible interaction with other sovereigns." *Id.* We must also be sensitive to the economic hardship that would occur if we were to require tribes to hire lawyers in ICWA matters. *Id.* at 11. Many tribes lack the resources for legal representation. Therefore, we hold a non-lawyer tribal member may represent the tribe in ICWA proceedings as long as the representative can demonstrate he or she is authorized to speak on behalf of the tribe.

Steele presented the juvenile court with a tribal resolution authorizing her to represent the tribe in the custody proceedings involving Nairobi. Thus, on remand Steele shall be allowed to fully participate in further proceedings.

**D.     Telephonic participation.** The tribe contends the juvenile court erred by refusing to allow the tribe to participate by telephone in the November 1 hearing. We find the juvenile court did not abuse its discretion in overruling the tribe's motion to participate telephonically. An abuse of discretion is only found when a court exercises "its discretion on grounds or for reasons that are clearly untenable or to an extent that is clearly unreasonable." *Baker v. City of Iowa City,* ___

N.W.2d \_\_\_, \_\_\_ (Iowa 2008). The juvenile court's decision to deny the tribe's motion because the tribe failed to make a timely request to appear by telephone was well within its discretion. Nevertheless, we encourage juvenile courts to allow tribes to participate by telephone, particularly where the tribe is located out-of-state.

**E. Expert witness testimony.** The tribe complains the juvenile court erred by allowing Denney to testify at the parental rights termination hearing when he was not timely disclosed as a witness and was not qualified as an ICWA expert. Denney testified he was employed by the Santee Sioux Nation as an ICWA specialist. He testified briefly to a conversation he had with Shannon. They discussed Shannon's knowledge of ICWA and her reasons for terminating her parental rights to Nairobi. Denney testified it was his opinion Shannon's decision was both informed and voluntary.

The Iowa ICWA requires expert witness testimony in some circumstances:

> In considering whether to *involuntarily* place an Indian child in foster care or to terminate the parental rights of the parent of an Indian child, the court shall require that qualified expert witnesses with specific knowledge of the child's Indian tribe testify regarding that tribe's family organization and child-rearing practices, and regarding whether the tribe's culture, customs, and laws would support the placement of the child in foster care or the termination of parental rights on the grounds that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Iowa Code § 232B.10(2) (emphasis added). Similarly,

> [a]n adoptive placement of an Indian child shall not be ordered in the absence of a determination, supported by clear and convincing evidence including the testimony of qualified expert witnesses, that the placement of the child is in the best interest of the child.

*Id.* § 232B.9(4). A " 'qualified expert witness' may include, but is not limited to, a social worker, sociologist, physician, psychologist, traditional tribal therapist and healer, spiritual leader, historian, or elder." *Id.* § 232B.10(1).

Denney's testimony was not necessary in the present case because Shannon's parental rights were not being involuntarily terminated and Nairobi's adoptive placement was not before the court. *See id.* § 232B.3((1) (defining an "adoptive placement" as the "permanent placement of an Indian child for adoption"). Moreover, Denney's testimony simply reiterated Shannon's testimony. Thus, any error in allowing Denney to testify was harmless.

## IV.    Conclusion.

The Iowa ICWA placement preferences are unconstitutional in voluntary termination cases. We remand so that the juvenile court may determine whether "good cause" exists to deviate from the federal ICWA placement preferences. A tribe may appear in court through a non-lawyer representative in ICWA proceedings. The juvenile court did not abuse its discretion in denying the tribe's untimely request to appear by telephone. Denney's testimony at the November 1 hearing to terminate Shannon's parental rights was unnecessary but harmless. Because we remand for further findings, the tribe's motion requesting the juvenile court to rule on Buckmeier's motion to quash is not moot.

**REVERSED AND REMANDED.**

All justices concur except Baker, J., who takes no part.