277 Neb. 1023
IN RE INTEREST OF ELIAS L., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
JENNIFER M. AND MICHAEL L., APPELLEES, AND THE PONCA TRIBE OF NEBRASKA, APPELLANT.
IN RE INTEREST OF EVELYN M., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
JENNIFER M., APPELLEE, AND THE PONCA TRIBE OF NEBRASKA, APPELLANT.
Nos. S-08-1182, S-08-1183
Supreme Court of Nebraska.
Filed June 26, 2009.
Brad S. Jolly, of Smith & Jolly, L.L.C., for appellant.
No appearance for appellees.
Sarah Helvey and LaShawn Young for amicus curiae Nebraska Appleseed Center for Law in the Public Interest.
Rosalynd J. Koob, of Heidman Law Firm, L.L.P., for amicus curiae Winnebago Tribe of Nebraska.
Mark C. Tilden, of Native American Rights Fund, for amici curiae National Indian Child Welfare Association et al.
Ben Thompson, of Thompson Law Office, L.L.C., for amicus curiae Omaha Tribe of Nebraska.
Jennifer Gaughan for amicus curiae Legal Aid of Nebraska.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, AND MILLER-LERMAN, JJ.
CONNOLLY, J.
The Ponca Tribe of Nebraska (Tribe) appeals from the county court's order denying its motion to intervene in child custody proceedings involving two children who are members of the Tribe. The court denied the motion to intervene because an attorney had not signed the motion. We reverse, and remand because the Tribe's right to intervene under the federal Indian Child Welfare Act (ICWA)[1] preempts Nebraska's laws regulating the unauthorized practice of law.[2]
The Nebraska Department of Health and Human Services filed two separate petitions in the Dakota County Court alleging that Elias L. and Evelyn M., both children of Jennifer M., are children in need of assistance under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). Because the children are "Indian children" under both ICWA and the Nebraska ICWA,[3] the Tribe was notified of the children's custody proceedings. The Tribe moved for intervention under § 1911(c), which provides that "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding."[4]
Jill Holt, the Tribe's ICWA specialist and an employee of the Tribe's Department of Social Services, and the Tribe's representative, filed the motion. No party objected. Yet, on October 9, 2008, the court refused to let the Tribe intervene. It ruled that the motion "is not filed in the Court's files pursuant to . . . § 7-101."
The court recognized that the Tribe had a right to intervene under ICWA and the Nebraska ICWA but determined that Holt was not an attorney licensed by the Nebraska Supreme Court to practice law in the State of Nebraska. The court stated that it "is charged with the duty to enforce the prohibition against the practice of law without a license." Because an attorney licensed to practice in Nebraska had not filed the motion, the court refused to recognize the motion.
The Tribe retained legal counsel and appealed. The Tribe assigns that the county court erred in concluding that § 7-101 prohibits it from intervening in an ICWA and Nebraska ICWA child custody proceeding without being represented by a Nebraska licensed attorney. The Tribe also assigns that the court erred in failing to conclude that § 1911(c), which gives an Indian child's tribe the right to intervene in an ICWA proceeding, preempts § 7-101 under the Supremacy Clause of the U.S. Constitution.
[1-3] Statutory interpretation presents a question of law, which we decide independently of the determination made by the lower court.[5] In considering a motion to intervene, we assume that the petition's allegations are true.[6] Additionally, we review juvenile cases de novo on the record and reach conclusions independently of the juvenile court's findings.[7]
The federal ICWA and state ICWA are silent regarding whether a tribe may appear in court through a nonlawyer representative. Nebraska law allows plaintiffs "the liberty of prosecuting, and defendants . . . the liberty of defending," themselves.[8] But Nebraska does limit nonlawyer representation. Section 7-101 provides that
no person shall practice as an attorney or counselor at law, or commence, conduct or defend any action or proceeding to which he is not a party, either by using or subscribing his own name, or the name of any other person, or by drawing pleadings or other papers to be signed and filed by a party, in any court of record of this state, unless he has been previously admitted to the bar by order of the Supreme Court of this state. . . . It is hereby made the duty of the judges of such courts to enforce this prohibition.
Applying § 7-101, the county court refused to recognize the Tribe's motion to intervene because a Nebraska licensed attorney did not file the motion. But the Tribe argues that federal law preempts any Nebraska law which requires an attorney to represent the Tribe in ICWA proceedings.
[4, 5] Generally, federal law preempts state law when it "conflicts with a federal statute,"[9] when a state law does "major damage to clear and substantial federal interests,"[10] or when the U.S. Congress explicitly declares federal legislation to have a preemptive effect.[11] But that is not the preemption standard here. When the state law affects Indian tribes, courts must make "`a particularized inquiry into the nature of the state, federal, and tribal interests at stake.'"[12] In such cases, state jurisdiction over an action or issue is preempted if "it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority."[13]
Here, we first determine whether the state law requiring that an attorney represent the Tribe in ICWA proceedings "interferes or is incompatible with" the Tribe's right to intervene. If an interference or incompatibility appears, then we must balance the competing state and tribal interests.
The Tribe argues that conditioning tribal intervention on whether an attorney represents it would significantly interfere with its ability to intervene. The Tribe claims it lacks sufficient financial resources to retain legal counsel to represent it in state court child custody proceedings governed by ICWA. By implication, if the Tribe cannot intervene, its rights and interests in the Indian child would go unrepresented.
The Tribe claims that its primary source of funding for child and family services comes from federal grants and contracts. But some doubt exists whether a tribe can use federal child welfare funds to support legal representation for the tribe in child custody proceedings.[14] The Tribe claims that it lacks financial resources outside those provided by the federal government and cannot independently pay for legal counsel. The Tribe claims that because of these economic barriers, any requirement that tribes appear with legal counsel interferes with the Tribe's right to intervene. We find the Tribe's argument persuasive.
Federally recognized Indian tribes, while possessing unique attributes of sovereignty and self-government,[15] lack many of the revenue-generating options open to federal and state governments.[16] And we must be cognizant of the hardship that would occur if we were to require tribes to hire attorneys in ICWA matters. Requiring legal counsel to represent the Tribe in ICWA proceedings would place additional financial burdens on the Tribe which would directly interfere with its right to intervene. Thus, we conclude that enforcement of § 7-101 in this case interferes and is incompatible with the federally granted tribal right of intervening in child custody proceedings governed by ICWA.
We next address whether the State's interest in enforcement of the representation requirement in ICWA proceedings outweighs tribal interests in intervening in such proceedings. Because requiring legal counsel as a condition of intervention under ICWA would, at a minimum, burden the Tribe's right of intervention, the State can require legal representation only if the State's interests outweigh those of the Tribe and the United States.[17]
Obviously, the State has a legitimate interest in requiring groups and associations to be represented by an attorney. Section 7-101 ensures that those appearing in judicial proceedings are familiar with substantive and procedural requirements and protocols, thus ensuring adequate representation.[18] By limiting the practice of law to only licensed attorneys, the State's goal is to protect the public from any potential harm caused by the actions of nonlawyers engaging in the unauthorized practice of law.[19]
Yet, Nebraska law allows individuals to represent themselves and participate in trials and legal proceedings in their own behalf.[20] And, an employee of an organization can engage in certain acts that would normally constitute the practice of law if done for the sole benefit of the organization.[21] Additionally, a nonlawyer may engage in the authorized practice of law to the extent allowed by a published opinion or rule of this court.[22] So, while the general rule may be that only an individual can appear pro se in his or her own behalf,[23] statutes and court rules provide some exceptions.
Furthermore, the Tribe has significant interests in intervening in ICWA proceedings. Congress passed ICWA in response to the alarmingly high number of Indian children being removed from their families and placed in non-Indian adoptive or foster homes by state welfare agencies and courts.[24] At the time of ICWA's enactment, 25 to 35 percent of all Indian children were removed and separated from their tribes and families to be placed in adoptive or foster homes.[25] To make matters worse, about 90 percent of Indian adoption placements occurred in non-Indian homes away from their culture and community.[26]
Commenting on the loss of Indian culture, Congress noted that "[c]ontributing to this problem has been the failure of State officials, agencies, and procedures to take into account the special problems and circumstances of Indian families and the legitimate interest of the Indian tribe in preserving and protecting the Indian family as the wellspring of its own future."[27] Ultimately, Congress enacted ICWA in response to the looming crisis facing Indian tribesnamely, that they would face extinction through the removal of their children through state court child custody proceedings. Congress concluded that "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children."[28] Thus, Congress designed the procedural and substantive standards of ICWA to "`protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society.'"[29] The Tribe's right to intervene in state court child custody proceedings provides a means to achieve this goal.
Moreover, other state courts have concluded that the tribal interests articulated in ICWA are of the highest order, outweighing other state interests. The Utah Supreme Court stated that "[t]he protection of th[e] tribal interest [in its children] is at the core of the ICWA."[30] The Iowa Supreme Court, concluding that an Indian tribe may represent itself in ICWA proceedings, determined that the state's interest in requiring adequate representation "`cannot compare with a tribe's interests in its children and its own future existence.'"[31]
And, in the narrow context of ICWA proceedings, the State's interests are not necessarily compromised by allowing the Tribe to be represented by a nonlawyer. In this case, the Tribe has authorized Holt, its ICWA specialist, to appear on its behalf and has entrusted her with representing its interests in ICWA proceedings. Her responsibilities require familiarity with the procedural and substantive requirements of ICWA, and familiarity with other social service agencies that are a part of the state child custody proceedings. In sum, the Tribe has authorized her to speak for it, and she is familiar with the applicable law and procedures.
[6] We conclude that tribal participation in state custody proceedings involving Indian children is essential to achieving the goals of ICWA. The tribal interests represented by ICWA and the Tribe's right to intervene under § 1911(c) and § 43-1504(3) outweigh the State interests represented by § 7-101. Under the applicable preemption test, the scale tips in favor of tribal interests. Thus, we determine that federal law preempts the requirement of § 7-101 that the Tribe be represented by a Nebraska licensed attorney in these ICWA proceedings. On remand, the court shall allow the Tribe's designated representative to fully participate in further proceedings.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] 25 U.S.C. §§ 1901 to 1963 (2006).
[2] See Neb. Rev. Stat. §§ 7-101 to 7-116 (Reissue 2007).
[3] Neb. Rev. Stat. §§ 43-1501 to 43-1516 (Reissue 2008).
[4] Accord § 43-1504(3).
[5] See In re Adoption of Kenten H., 272 Neb. 846, 725 N.W.2d 548 (2007).
[6] See Basin Elec. Power Co-op v. Little Blue N.R.D., 219 Neb. 372, 363 N.W.2d 500 (1985).
[7] See In re Interest of Tyler F., 276 Neb. 527, 755 N.W.2d 360 (2008).
[8] § 7-110.
[9] Zannini v. Ameritrade Holding Corp., 266 Neb. 492, 503, 667 N.W.2d 222, 232 (2003) (citing Eyl v. Ciba-Geigy Corp., 264 Neb. 582, 650 N.W.2d 744 (2002)).
[10] Collett v. Collett, 270 Neb. 722, 728, 707 N.W.2d 769, 774 (2005).
[11] See Zannini, supra note 9.
[12] New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 333, 103 S. Ct. 2378, 76 L. Ed. 2d 611 (1983) (quoting White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980)).
[13] New Mexico, supra note 12, 462 U.S. at 334. See, also, In re N.N.E., 752 N.W.2d 1 (Iowa 2008); State ex rel. Juv. Dept. v. Shuey, 119 Or. App. 185, 850 P.2d 378 (1993).
[14] See, e.g., § 1931(a)(5) and (8); 25 C.F.R. §§ 89.40 and 89.41 (2008). See, also, In re N.N.E., supra note 13; Shuey, supra note 13.
[15] United States v. Wheeler, 435 U.S. 313, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978) (superseded by statute as stated in U.S. v. Weaselhead, 156 F.3d 818 (8th Cir 1998)).
[16] See, generally, 42 C.J.S. Indians § 140 (2007); Atkinson Trading Co. v. Shirley, 532 U.S. 645, 121 S. Ct. 1825, 149 L. Ed. 2d 889 (2001).
[17] New Mexico, supra note 12.
[18] See Shuey, supra note 13.
[19] Neb. Ct. R., ch. 3, art. 10, Statement of Intent.
[20] § 7-110.
[21] Neb. Ct. R. §§ 3-1001 and 3-1004(N).
[22] Neb. Ct. R. § 3-1004(W).
[23] Compare §§ 7-101 and 7-110. See, also, Osborn v. United States Bank, 22 U.S. (9 Wheat.) 738, 6 L. Ed. 204 (1824).
[24] Mississippi Choctaw Indian Band v. Holyfield, 490 U.S. 30, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989).
[25] Id.
[26] Id.
[27] H.R. Rep. No. 95-1386, at 19 (1978), reprinted in 1978 U.S.C.C.A.N. 7530, 7541. See, also, § 1901(5).
[28] § 1901(3).
[29] See Holyfield, supra note 24, 490 U.S. at 37.
[30] Matter of Adoption of Halloway, 732 P.2d 962, 969 (Utah 1986).
[31] In re N.N.E., supra note 13 at 12.