IN RE ADOPTION OF KENTEN H.
MEAGHAN H., APPELLANT, V. MARK J.
AND SHERYL J., APPELLEES.
725 N.W.2d 548

Filed January 5, 2007.    No. S-06-204.

Patricia A. Knapp for appellant.

Susan K. Sapp and Stanton N. Beeder, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

Jon Bruning, Attorney General, and B. Gail Steen, Special Assistant Attorney General, for amicus curiae Nebraska Department of Health and Human Services.

HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Meaghan H., the biological mother of Kenten H., petitioned the county court for Lancaster County to vacate the adoption of Kenten pursuant to the Nebraska Indian Child Welfare Act (NICWA), Neb. Rev. Stat. §§ 43-1501 to 43-1516 (Reissue 2004). The matter was assigned to the separate juvenile court of Lancaster County, which had entered the decree of adoption, and that court granted a motion to dismiss for failure to state a claim filed by the adoptive parents, Mark J. and Sheryl J. Meaghan filed this timely appeal.

## BACKGROUND

In considering the motion to dismiss, the separate juvenile court took judicial notice of documents filed in earlier juvenile

court proceedings and the adoption proceeding, which proceedings disclose the following facts: Kenten was born prematurely on August 16, 2002. On November 14, the State of Nebraska filed a petition in the separate juvenile court seeking to adjudicate Kenten and three of his siblings as minor children within the meaning of Neb. Rev. Stat. § 43-247(3) (Cum. Supp. 2002) due to the fault or habits of their parents, Meaghan and Kent H. At that time, Kenten was still hospitalized in Lincoln, Nebraska. On the same date, Kenten was placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS). On January 8, 2003, he was released from the hospital and placed in foster care.

An adjudication hearing was scheduled, and on March 19, 2003, a deputy county attorney gave notice of the hearing to the Iowa Tribe of Kansas and Nebraska (the Iowa Tribe). In an affidavit accompanying the notice, the deputy county attorney affirmatively stated that Kenten and his siblings "are a member [sic] of or may be eligible for membership" in the Iowa Tribe. The notice was given pursuant to NICWA and the federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901 to 1963 (2000). A petition to terminate the parental rights of both parents as to Kenten was filed on April 8. Notice of a hearing on the adjudication and termination was given to the Iowa Tribe. The notice included a statement that Kenten was "a member of or may be eligible for membership in" the Iowa Tribe.

On June 24, 2003, the court determined that Kenten was a child as defined by § 43-247(3)(a) due to the fault or habits of Kent. The adjudication as to Meaghan was continued. On August 20, the court found that Kenten was a child as defined by § 43-247(3)(a) by reason of the fault or habits of Meaghan. On the same date, the court granted the State's motion for leave to withdraw the petition to terminate the parental rights of Kent and Meaghan as to Kenten.

Meanwhile, on August 19, 2003, the adoptive parents, who at that time were the foster parents, filed a petition seeking to adopt Kenten. The petition was filed in the county court for Lancaster County and transferred to the separate juvenile court, which had concurrent jurisdiction pursuant to Neb. Rev. Stat. § 43-102 (Reissue 2004) by virtue of its prior adjudication.

Attached to the petition was an "Affidavit of Identification of Father" in which Kent was identified as the biological father and his tribal affiliation was listed as "UTE." In the petition, the adoptive parents alleged that the county attorney's office had notified "the Ute tribe" of the pending adoption, but never received a response. The adoptive parents further alleged that "neither Meaghan [nor] Kent . . . is a registered member of any Indian tribe and the minor child [Kenten] is not an 'Indian child' as defined in Neb. Rev. Stat. § 43-1503(4)." Also, attached to the petition was a "Relinquishment of Child by Parent" purportedly signed by Meaghan on June 20, 2003, stating that she voluntarily relinquished to DHHS "all right to and custody of and power and control over" Kenten so that DHHS became his legal guardian. The relinquishment further provided that Meaghan authorized DHHS to place Kenten in a suitable family home and "consent to and procure" his adoption. An identical relinquishment signed by Kent was also attached to the petition.

In its decree of adoption entered on September 30, 2003, the separate juvenile court specifically found that all of the allegations in the petition were true. Eight days after the entry of the decree, the Iowa Tribe filed an "Entry of Appearance & Notice of Intervention to Monitor." This document recites that Kenten is enrolled in the tribe and assigned an enrollment number. This is the only filing by any tribe appearing in the record.

On August 24, 2005, Meaghan filed a petition to vacate the adoption pursuant to NICWA. The petition was filed in the county court for Lancaster County and assigned to the separate juvenile court. In the petition, Meaghan alleged that she was Kenten's biological mother and an enrolled member of the Iowa Tribe, that Kenten was eligible for enrollment through her family and was enrolled as a member of the tribe on June 25, 2003, and that he was therefore an "Indian child" for purposes of NICWA and ICWA. Meaghan further alleged that she was hospitalized and "under the influence of morphine and other mind-altering medications" when she signed the relinquishment on June 20 and that while she was in this condition, a DHHS caseworker told her that her only hope of keeping any of her children was to voluntarily relinquish her rights to Kenten. Meaghan alleged that the relinquishment was obtained through "fraud,

threats, coercion, and duress" and in violation of certain DHHS regulations and provisions of NICWA. Meaghan attached to her petition a "Withdrawal of Parental Consent to Adoption" purportedly signed by her on August 24, 2005, stating that she was withdrawing her consent to Kenten's adoption "on the grounds that my consent was obtained through fraud and duress and in violation of the provisions of the federal and Nebraska Indian Child Welfare Acts."

After initially filing an answer to the petition, the adoptive parents filed a motion to dismiss pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b) (rev. 2003) on October 20, 2005. In this motion, the adoptive parents alleged that the petition to vacate was not timely pursued, that there was a defect of the parties because DHHS was not joined, that Meaghan had waived and is estopped from asserting parental rights to Kenten, and that Meaghan had made no claims of fraud or duress until 26 months after executing the relinquishment. No evidence was received at a hearing on the motion, but at the request of the adoptive parents and without objection by Meaghan, the court took judicial notice of its file in the earlier proceedings. On January 18, 2006, the juvenile court entered an order dismissing Meaghan's petition to vacate, concluding that the showing that Kenten was an "Indian child" to whom NICWA applied came too late and that thus, Meaghan was not entitled to invoke NICWA's provisions as a basis for vacating the adoption. The court acknowledged that notice as required by NICWA had been given to the Iowa Tribe during the juvenile proceedings, but found that this was only because there was an indication that the case may involve an Indian child under NICWA. The court concluded that notwithstanding the notice, until it had knowledge from the tribe that Kenten was a child subject to NICWA or other evidence that Kenten was enrolled as a member of a tribe, Kenten was not an "Indian child" subject to NICWA. In this respect, the juvenile court specifically determined that at the time of the initial juvenile abuse and neglect proceeding and later in the adoption proceeding, it had "no knowledge or evidence" that the case involved NICWA. The court concluded that the Iowa Tribe's appearance and notice was filed too late in the adoption

proceeding to trigger the provisions of NICWA, and it therefore granted the motion to dismiss.

Meaghan filed this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). Kent is not a party to these proceedings.

## ASSIGNMENT OF ERROR

Meaghan assigns that the juvenile court erred in dismissing her petition to vacate the adoption.

## STANDARD OF REVIEW

■ The trial court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Moglia v. McNeil* Co., 270 Neb. 241, 700 N.W.2d 608 (2005).

■ When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Young v. Midwest Fam. Mut. Ins. Co.,* ante p. 385, 722 N.W.2d 13 (2006); *Turco v. Schuning,* 271 Neb. 770, 716 N.W.2d 415 (2006).

## ANALYSIS

### PROCEDURAL MATTERS

The motion to dismiss does not specify which of the defenses enumerated in rule 12(b) are asserted. From the narrative content of the motion, we construe it as asserting the defenses of failure to state a claim upon which relief can be granted, pursuant to rule 12(b)(6), and failure to join a necessary party, pursuant to rule 12(b)(7). Rule 12(b) provides that a motion asserting any of the enumerated defenses "shall be made before pleading if further pleading is permitted." The motion to dismiss in this case was filed *after* the filing of the answer and is therefore technically untimely. In construing our current pleading rules, we have looked to federal cases interpreting similar

federal rules. See *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005). Generally, federal courts have considered the merits of untimely rule 12(b) motions if the defenses asserted therein were previously included in an answer. See, *Litchfield Financial v. Buyers Source Real Estate*, 389 F. Supp. 2d 80 (D. Mass. 2005); *Puckett v. U.S.*, 82 F. Supp. 2d 660 (S.D. Tex. 1999); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 (3d ed. 2004 & Supp. 2006). Because the defenses asserted in the adoptive parents' motion to dismiss were previously asserted in their answer, the untimely filing of the motion does not preclude consideration of the merits. In addition, rule 12(h)(2) provides that the defenses of failure to state a claim upon which relief can be granted and failure to join necessary parties may be made in any pleading.

■ According to rule 12(b), if on a motion to dismiss for failure to state a claim "matters outside the pleading are presented to and not excluded by the court," the motion shall be treated as one for summary judgment. See *Wise v. Omaha Public Schools*, 271 Neb. 635, 714 N.W.2d 19 (2006). However, a court may take judicial notice of matters of public record without converting a rule 12(b) motion to dismiss into a motion for summary judgment. *Ferer v. Erickson, Sederstrom, ante* p. 113, 718 N.W.2d 501 (2006). We therefore consider the judicially noticed filings from the previous proceedings in resolving the motion to dismiss.

### RULE 12(b)(6) DEFENSE

In her petition to vacate, Meaghan sought to set aside Kenten's adoption because her relinquishment "was obtained through fraud, threats, coercion and duress" and because her consent was obtained in violation of certain DHHS regulations and provisions of NICWA. Her petition specifically referenced § 43-1506(4), a NICWA provision which provides:

> After the entry of a final decree of adoption of an Indian child in any state court, the parent may withdraw consent thereto upon the grounds that consent was obtained through fraud or duress and may petition the court to vacate such decree. Upon a finding that such consent was obtained through fraud or duress, the court shall vacate such decree and return the child to the parent. No adoption which has

been effective for at least two years may be invalidated under the provisions of this subsection unless otherwise permitted under state law.

NICWA was enacted "to clarify state policies and procedures regarding the implementation by the State of Nebraska of the federal Indian Child Welfare Act, 25 U.S.C. [§] 1901 et seq." § 43-1502. The Legislature declared that "[i]t shall be the policy of the state to cooperate fully with Indian tribes in Nebraska in order to ensure that the intent and provisions of the federal Indian Child Welfare Act are enforced." § 43-1502. The NICWA provisions correspond closely to the ICWA that was enacted by Congress in 1978

> to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

25 U.S.C. § 1902. Generally stated, the substantive portions of ICWA and the corresponding provisions of NICWA provide heightened protection to the rights of Indian parents, tribes, and children in proceedings involving custody, termination, and adoption.

▆ Applicability of these protective statutes depends on whether the proceedings involve an "Indian child." See *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990). Pursuant to § 43-1503(4) and 25 U.S.C. § 1903(4), "Indian child means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." Under Nebraska law, a party to a proceeding who seeks to invoke a provision of NICWA has the burden to show that the act applies in the proceeding. *In re Interest of A.M., C.M., and L.M.*, 235 Neb. 506, 455 N.W.2d 572 (1990); *In re Interest of J.L.M. et al., supra.* For purposes of reviewing the juvenile court's disposition of the motion to dismiss, we must accept as true Meaghan's allegation that Kenten

was enrolled as a member of the Iowa Tribe on June 25, 2003. Similarly, we assume the truth of the statement by the Iowa Tribe in its notice of intervention filed in the adoption proceeding that Kenten is an enrolled member.

Meaghan's allegation and the tribe's statement clearly establish that Kenten is an "Indian child" within the meaning of NICWA. But the critical issue in the instant case is not *whether* Kenten is an "Indian child," but, rather, *when* his status was established in these proceedings. The adoptive parents argue that because Kenten's status as an Indian child was established after the decree was entered, Meaghan has completely waived her rights under NICWA. Alternatively, they argue that Meaghan's action is untimely because no court action to invalidate the adoption occurred within 2 years of the date of the decree. We find both arguments to be unpersuasive.

In *In re Interest of A.M., C.M., and L.M., supra*, we held that the fact that notice was given to an Indian tribe prior to the entry of an order terminating parental rights was insufficient to make the provisions of NICWA applicable to the termination proceedings, where there was no other evidence of Indian child status. In *In re S.B.*, 130 Cal. App. 4th 1148, 30 Cal. Rptr. 3d 726 (2005), Indian child status was established just prior to the final hearing in a termination of parental rights case and the court applied ICWA to that proceeding. However, the court rejected the biological mother's claim that prior orders entered in the case should be invalidated on the ground of noncompliance with notice provisions of ICWA. The court determined that the mother had waived the right to claim the protection of the statute by failing to assert and establish the children's Indian child status earlier despite her "superior access to this information." 130 Cal. App. 4th at 1160, 30 Cal. Rptr. 3d at 732.

Similarly, the court in *State ex rel. Juv. Dept. v. Tucker*, 76 Or. App. 673, 710 P.2d 793 (1985), held that where Indian child status was not established until 2 years after the child was placed in foster care and the court had no reason to know that the child was an Indian child at the time of placement, the placement could not be invalidated for failure to comply with ICWA. Colorado courts hold that until the party asserting the applicability of the Colorado ICWA establishes, on the record, that the

child is an "Indian child," the ICWA is not applicable. *In Interest of A.G.-G.*, 899 P.2d 319 (Colo. App. 1995); *People in Interest of A.E.*, 749 P.2d 450 (Colo. App. 1987).

■ These cases establish that the provisions of ICWA and NICWA apply prospectively from the date Indian child status is established on the record. In this case, Kenten's status as an Indian child was established on the record when the Iowa Tribe entered its appearance in the adoption proceeding on October 8, 2003, 8 days after entry of the decree of adoption. We hold that NICWA applies prospectively from that date.

The adoptive parents argue that Meaghan may not rely on any provision of NICWA because Kenten's status as an Indian child was not established until after the entry of the decree. We agree that Meaghan may not rely upon NICWA provisions to challenge certain matters that were completed prior to the date Kenten's status was established on the record. In this action, Meaghan's consent to Kenten's relinquishment was completed on June 20, 2003. Kenten's Indian child status was not established on the record until October 8. Because NICWA applies only prospectively from the date it is established on the record, Meaghan may not now argue that her consent to Kenten's relinquishment is invalid because it was not obtained pursuant to the substantive provisions of § 43-1506(1).

However, Meaghan also seeks to set aside the decree of adoption on the basis that her consent was obtained through fraud and duress. This type of postdecree challenge is specifically authorized by § 43-1506(4). Meaghan therefore is entitled to assert the provisions of § 43-1506(4) in her petition to vacate, assuming her petition was timely filed.

The adoptive parents assert that Meaghan's fraud and duress challenge is untimely under the last sentence of § 43-1506(4), which provides: "No adoption which has been effective for at least two years may be invalidated under the provisions of this subsection unless otherwise permitted under state law." The adoptive parents contend that this language requires judicial action within the 2-year period and that because the decree was not invalidated within 2 years after its entry, it can never be invalidated under § 43-1506(4). They rely on three cases from other jurisdictions, none of which involve statutes similar to

§ 43-1506(4). See, *Kellogg-Citizens Nat. Bank v. Francois*, 240 Wis. 432, 3 N.W.2d 686 (1942); *Lawson v. Hughes et al.*, 127 Or. 16, 256 P. 1043 (1928); *Babbitt v. Hualde*, 23 Ariz. 582, 206 P. 161 (1922).

The construction of § 43-1506(4) urged by the adoptive parents is both novel and incorrect. We read § 43-1506(4) to require that the petition to vacate be filed within 2 years from the date of the decree, not to require that the court actually invalidate the decree within the 2-year period. To construe the language otherwise would ignore the phrase "unless otherwise permitted under state law." Under general Nebraska adoption law, it is

> conclusively presumed that the adoption and all instruments and proceedings in connection therewith are valid in all respects notwithstanding some defect or defects may appear on the face of the record, or the absence of any record of such court, unless an action shall be brought within two years from the entry of such decree of adoption attacking its validity.

Neb. Rev. Stat. § 43-116 (Reissue 2004). A party may challenge an adoption on the ground of fraud within the 2-year limitations period of § 43-116. See *Hiatt v. Menendez*, 157 Neb. 914, 62 N.W.2d 123 (1954). A parent of a non-Indian child thus clearly has 2 years from the date the adoption decree is entered to challenge the decree. Furthermore, ICWA provides:

> In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.

25 U.S.C. § 1921. To construe § 43-1506(4) as establishing a more restrictive limitations period than that established by § 43-116 would be incongruent with this federal requirement, as well as the language of § 43-1506(4) itself.

We find no merit in the adoptive parents' argument that Meaghan waived the right to rely on § 43-116 in arguing that her petition to vacate states a claim upon which relief can be granted. Although Meaghan's petition to vacate specifically referenced only § 43-1506(4), the petition alleged that her consent

to Kenten's relinquishment and ultimately to his adoption was obtained by fraud and duress. Such a claim based on common-law principles can be asserted within the 2-year limitations period stated in §§ 43-116 and 43-1506(4).

In their motion to dismiss, the adoptive parents alleged that "Kenten was never a member of an existing Indian family and therefore the Existing Indian Family Exception applies." They argue this as an alternative basis for affirming the judgment of dismissal. Some state courts have concluded that the purpose of ICWA is not served by applying it to children who have never been part of an existing Indian family, and these courts have thus declined to apply ICWA in situations where neither the child nor his parents have any significant contact with an Indian tribe. See, e.g., *Rye v. Weasel*, 934 S.W.2d 257 (Ky. 1996); *Hampton v. J.A.L.*, 658 So. 2d 331 (La. App. 1995); *Adoption of Crews*, 118 Wash. 2d 561, 825 P.2d 305 (1992); *In Interest of S.A.M.*, 703 S.W.2d 603 (Mo. App. 1986); *In re Adoption of Baby Boy L.*, 231 Kan. 199, 643 P.2d 168 (1982). Other courts and commentators, however, argue that this judicially imposed "existing Indian family" exception to ICWA is unwarranted, unjustified, and renders many of its provisions superfluous. See, e.g., *In re Baby Boy C.*, 27 A.D.3d 34, 805 N.Y.S.2d 313 (2005); *In re A.B.*, 663 N.W.2d 625 (N.D. 2003); *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 7 P.3d 960 (Ariz. App. 2000); *State in Interest of D.A.C.*, 933 P.2d 993 (Utah App. 1997). A number of jurisdictions have determined that the U.S. Supreme Court's decision in *Mississippi Choctaw Indian Band v. Holyfield*, 490 U.S. 30, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989), weighs heavily against the adoption of the exception. See, e.g., *In re Baby Boy C., supra*; *In re A.B., supra*; *Matter of Adoption of Baade*, 462 N.W.2d 485 (S.D. 1990).

Nebraska's appellate courts have never decided whether to adopt the "existing Indian family" exception to ICWA and NICWA, and we need not do so in this appeal. Meaghan's petition to vacate the adoption on the ground that her consent was obtained through fraud and duress states a claim that is not time barred under either § 43-116 or § 43-1506(4). Thus, a determination that the exception applied would not affect the ultimate

validity of her claim. We therefore do not reach any issue involving the existing Indian family exception.

### RULE 12(b)(7) DEFENSE

As another alternative basis for affirming the judgment of dismissal, the adoptive parents argue that Meaghan failed to join DHHS and the guardian ad litem in the prior juvenile proceeding as necessary parties. The juvenile court did not reach this issue.

█ The presence of necessary parties to a suit is a jurisdictional matter and cannot be waived by the parties; it is the duty of the plaintiff to join all persons who have or claim any interest which could be affected by the judgment. *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997). An indispensable or necessary party to a suit is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. See *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001).

We conclude that neither DHHS nor the guardian ad litem is a necessary party in this action. Although DHHS was Kenten's legal custodian immediately prior to the adoption, it relinquished Kenten for purposes of adoption. The juvenile court entered an order relieving DHHS of custody. Thus, DHHS has no present interest which could be affected by a judgment in this proceeding.

Although the adoptive parents argue that the guardian ad litem appointed in the prior juvenile proceeding is a necessary party in this action, they did not raise that issue in their motion to dismiss. In any event, we conclude that the previous guardian ad litem has no present interest which could be affected by a judgment in this proceeding.

### CONCLUSION

For the reasons discussed, we conclude that the petition to vacate the decree of adoption states a claim upon which relief can be granted in that it alleges that Meaghan's consent was obtained by fraud or duress. The action to obtain such relief was timely filed and included all necessary parties. We reverse the

judgment of the juvenile court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WRIGHT, J., not participating.