CASES DETERMINED

IN THE

# NEBRASKA COURT OF APPEALS

In re Interest of Shayla H. et al.,
children under 18 years of age.
State of Nebraska, appellee, v.
David H., appellant.

___ N.W.2d ___

Filed May 20, 2014.    No. A-13-643.

1. **Juvenile Courts: Evidence: Appeal and Error.** Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another.
2. **Indian Child Welfare Act: Parental Rights.** The substantive portions of the Indian Child Welfare Act and the corresponding portions of the Nebraska Indian Child Welfare Act provide heightened protection to the rights of Indian parents, tribes, and children in proceedings involving custody, termination, and adoption.
3. **Indian Child Welfare Act: Parental Rights: Proof.** The active efforts standard contained in Neb. Rev. Stat. § 43-1505 (Reissue 2008) requires more than the reasonable efforts standard that applies in cases not involving the Indian Child Welfare Act.
4. **Appeal and Error.** An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.
5. **Juvenile Courts: Minors.** The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of the juveniles who fall within it.
6. **Juvenile Courts.** The juvenile court has broad discretion as to the disposition of those who fall within its jurisdiction.
7. **Juvenile Courts: Parental Rights.** A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is within the Nebraska Juvenile Code.

(1)

8.  ____: ____. While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child.

9.  **Juvenile Courts: Appeal and Error.** In analyzing the reasonableness of a plan offered by a juvenile court, the Nebraska Supreme Court has noted that the following question should be addressed: Does a provision in the plan tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska Juvenile Code? An affirmative answer to the preceding question provides the materiality necessary in a rehabilitative plan for a parent involved in proceedings within a juvenile court's jurisdiction. Otherwise, a court-ordered plan, ostensibly rehabilitative of the conditions leading to an adjudication under the Nebraska Juvenile Code, is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures.

10. **Juvenile Courts: Parent and Child.** Similar to other areas of law, reasonableness of a rehabilitative plan for a parent depends on the circumstances in a particular case and, therefore, is examined on a case-by-case basis.

Appeal from the Separate Juvenile Court of Lancaster County: Linda S. Porter, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Patrick T. Carraher, of Legal Aid of Nebraska, for appellant.

Ashley Bohnet, Deputy Lancaster County Attorney, and Nikki Blazey, Senior Certified Law Student, for appellee.

Rosalynd Koob, of Heidman Law Firm, L.L.P., for amici curiae Winnebago Tribe of Nebraska and Omaha Tribe of Nebraska.

Brad S. Jolly, of Brad S. Jolly & Associates, L.L.C., for amicus curiae Ponca Tribe of Nebraska.

Jennifer Bear Eagle, of Fredericks, Peebles & Morgan, L.L.P., for amicus curiae Santee Sioux Nation.

Robert McEwen and Sarah Helvey, of Nebraska Appleseed Center for Law in the Public Interest, for amicus curiae Nebraska Appleseed Center for Law in the Public Interest.

Inbody, Chief Judge, and Moore and Riedmann, Judges.

Moore, Judge.

Following a dispositional hearing, the separate juvenile court of Lancaster County found that reasonable efforts had been made to return to David H. legal custody of his three children, but that returning the children's legal custody to David at that time would be contrary to their welfare. David was ordered to follow numerous provisions in a rehabilitation plan. David appeals, assigning error to the court's use of the reasonable efforts standard in place of the active efforts standard of the Indian Child Welfare Act (ICWA) in the disposition order. He also argues that the plan's provisions were not materially related to the underlying adjudication and that the court erred in permitting a change in the family therapist. For the reasons set out in our opinion below, we affirm in part, and in part reverse and remand for further proceedings.

## FACTUAL BACKGROUND

David is the father of three minor children: Shayla H., born in August 2001; Shania H., born in August 2003; and Tanya H., born in September 2004. He and his three daughters live together with his girlfriend, Danielle R., and her three children. Through David, his daughters are eligible for enrollment with the Rosebud Sioux Tribe. At the time of this case, the record shows that Shania and Tanya had become enrolled members of the tribe, while Shayla remained eligible for enrollment.

On January 17, 2013, the Department of Health and Human Services (DHHS) received an intake after Shayla was observed at school with a "dark purple hand-print bruise" on her right cheek. When describing the cause of her injuries, Shayla stated that Danielle had held her down and slapped her. The next day, DHHS took custody of David's and Danielle's children and removed them from the home. On January 22, the State filed a petition alleging that all six children, David's and Danielle's, lacked proper care by reason of Danielle's faults or habits.

By January 29, 2013, all of the children had returned home except for Shayla. Following a hearing on the State's motion for temporary custody, Shayla returned home on March 9.

All of the children have remained placed in the home since their return.

The State first notified the Rosebud Sioux Tribe of these juvenile court proceedings by way of an affidavit and notice dated January 31, 2013. The tribe filed a notice of intervention shortly thereafter. Following a hearing on April 2, the court granted the tribe leave to intervene as a party in these proceedings. The tribe did not appear at the adjudication or the disposition hearing.

The juvenile court held an adjudication hearing on April 19, 2013. On May 31, the court issued an order finding that the State had proved its allegations that Danielle had used inappropriate physical discipline on Shayla. Accordingly, the court found that Shayla, Shania, and Tanya (David's children) were at risk of harm as a result of Danielle's inappropriate discipline. However, the court declined to exercise jurisdiction over Danielle's children. In making that decision, the court reasoned that Danielle's children were older than David's and noted that there was no evidence of Danielle's having used inappropriate discipline on her children.

David and Danielle have participated in a variety of services since the initial intake in this case. Caseworkers have entered their home on a daily basis to observe the family at random times throughout the day. The family also successfully completed a unification services program which focused on David's and Danielle's parenting without using physical discipline. In the program's discharge report, the service providers noted that David and Danielle had improved their abilities in addressing negative behaviors and teaching alternative positive behaviors. In addition to these programs, the family also continued to receive family counseling from therapist Laurie Crayne.

The first dispositional hearing in this case was held on July 11, 2013. Silvia Betta Cole, a children and family service specialist for DHHS, was the only witness to testify at the hearing, and her lengthy court report was received in evidence. Cole has been the case manager since February 2013. Cole discussed David's and Danielle's use of a closet to discipline

Tanya. When Tanya misbehaved at school, she would be separated from the class in an alternative learning environment room until she corrected the behavior. To simulate this form of discipline at home, David and Danielle cleared out a closet and would have Tanya sit inside after misbehaving. While Tanya was inside, the door remained open. Cole also testified that allegations that Tanya was put into a closed closet were found to be untrue after a police investigation.

During Cole's testimony, she stated that DHHS wished to change the family therapist because the family had been working with Crayne for almost 4 years and DHHS felt as though the children had not made sufficient progress. In her opinion, a new perspective in this case would be beneficial. At the time of the hearing, she had identified a good candidate to become the replacement family therapist. Cole opined that the case was not at a stage where it could be closed, because the children had ongoing behavioral issues. She noted that Shania had a possible eating disorder and that Tanya had exhibited a tendency to run away from home after having visited with her biological mother.

After Cole's testimony, the State requested the court to adopt the DHHS recommendations that were contained in Cole's report. David objected to those recommendations, contending that many of the provisions were not related to the reason for the adjudication. He noted that the case would never be closed if DHHS attempts to "fix every problem that was not adjudicated."

At the conclusion of this hearing, the court orally announced that it was accepting the DHHS recommendation for a change in the family therapist. In the written order that followed, the court found that reasonable efforts had been made to return legal custody to David. However, the court concluded that returning the children's legal custody to David at that time would be contrary to their welfare. The court also made nine specific orders related only to David. Specifically, the court ordered David to

a. . . . cooperate with [DHHS] and service providers in his home.

b. . . . cooperate with all drop-in services as arranged by [DHHS] and allow access to [his] children and the family home at all times.

c. . . . not discuss the children's mother . . . or their visitation with their mother, except in a therapeutic setting.

d. . . . not use any form of physical discipline on any of the minor children, except any restraint-based discipline specifically approved by [DHHS, and] not place any of the minor children in a closet as a form of discipline at any time.

e. . . . provide the children access to necessary mental health care, including medication checks as appropriate.

f. . . . cooperate with family therapy as arranged by [DHHS].

g. . . . schedule and attend the children's regular medical, dental, and vision examinations and other specialist appointments as necessary and recommended by medical providers.

h. . . . schedule an appointment for Shania's speech and language evaluation, as recommended . . . in her psychological evaluation.

i. . . . ensure that the children have adequate adult supervision at all times [when] they are in his care.

David appeals from this order. An amici curiae brief was filed by Nebraska Appleseed Center for Law in the Public Interest and the Nebraska ICWA Coalition, consisting of the Ponca Tribe of Nebraska, Winnebago Tribe of Nebraska, Omaha Tribe of Nebraska, and Santee Sioux Nation.

## ASSIGNMENTS OF ERROR

David assigns, renumbered and restated, that the juvenile court erred in (1) applying the reasonable efforts standard for reunification instead of the ICWA standard of active efforts, (2) ordering him to follow a dispositional plan that was not material to the underlying reason for the adjudication, and (3) ordering his family to change the family therapist.

## STANDARD OF REVIEW

[1] Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Rylee S*., 285 Neb. 774, 829 N.W.2d 445 (2013).

## ANALYSIS

*Active Efforts Standard*
*of Reunification*.

We first address David's argument that the district court erred when it found that the State had made reasonable efforts to return the children's legal custody to him. He contends that ICWA applies to this case and that the active efforts standard should be applied at all stages in the case. The State responds that ICWA does not apply in cases, such as the present case, when physical custody of the minor children remains with a parent. Instead, the State argues that the ICWA active efforts requirement applies in only select custody proceedings when the State seeks a foster care placement or termination of parental rights to an Indian child.

We begin our analysis of this issue by noting that the purpose of ICWA, enacted in 1978, is

> to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

25 U.S.C. § 1902 (2012).

[2] The Nebraska Indian Child Welfare Act (NICWA) was enacted by the Nebraska Legislature in 1985 to "clarify state policies and procedures regarding the implementation by the

State of Nebraska of [ICWA]." Neb. Rev. Stat. § 43-1502 (Reissue 2008). The Legislature declared that "[i]t shall be the policy of the state to cooperate fully with Indian tribes in Nebraska in order to ensure that the intent and provisions of [ICWA] are enforced." § 43-1502. Generally stated, the substantive portions of ICWA and the corresponding portions of NICWA provide heightened protection to the rights of Indian parents, tribes, and children in proceedings involving custody, termination, and adoption. *In re Adoption of Kenten H*., 272 Neb. 846, 725 N.W.2d 548 (2007).

[3] Included in this heightened protection is the active efforts reunification standard found in Neb. Rev. Stat. § 43-1505(4) (Reissue 2008):

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and reha-bilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Case law in this state has clearly established that the active efforts standard in this section requires more than the reasonable efforts standard that applies in cases not involving ICWA. See, *In re Interest of Walter W*., 274 Neb. 859, 744 N.W.2d 55 (2008); *In re Interest of Ramon N*., 18 Neb. App. 574, 789 N.W.2d 272 (2010). See, also, Neb. Rev. Stat. § 43-292(6) (Cum. Supp. 2012).

The question presented to us in this case is whether ICWA's active efforts standard applies when the State, through DHHS, has legal custody of the children, but the children are placed in the parental home. Nebraska appellate courts have not specifically addressed this question. David argues that case law from other jurisdictions should lead this court to conclude that ICWA's protections are applicable at all stages of a juvenile court proceeding.

To support his claim, David directs our attention to *In re Jennifer A*., 103 Cal. App. 4th 692, 127 Cal. Rptr. 2d 54 (2002), a decision from a California Court of Appeal. In that case, a juvenile was adjudicated as a neglected child due to her

mother's faults and removed from the custody of her mother. *Id*. During a detention hearing, the superior court was allegedly notified that both of the child's parents were of Indian heritage. *Id*. At trial, however, no evidence relating to notice to the tribes was presented. After a subsequent disposition hearing, the court awarded custody of the child to her father, who was not married to the child's mother. *Id*.

On appeal, the mother argued that the lower court did not comply with ICWA's notice requirements. *In re Jennifer A., supra*. She contended that the record did not contain any proof that the tribes had been notified of the proceedings and of their right to intervene in the proceedings. *Id*. The county social services agency argued that any violation of the notice requirements was harmless because the child was ultimately placed in her father's custody. The California appellate court agreed with the mother, holding that because the county social services agency was seeking foster care placement in an involuntary proceeding, the county was obligated to comply with the ICWA notice requirements. *In re Jennifer A., supra*.

However, we note that a subsequent decision from the California Court of Appeal noted that the holding in *In re Jennifer A.* was limited to the specific facts presented in that case. See *In re Alexis H.*, 132 Cal. App. 4th 11, 33 Cal. Rptr. 3d 242 (2005). In so limiting *In re Jennifer A., supra*, the California court noted that the statutory text limited ICWA's application to cases where Indian children were removed from their family. See *In re Alexis H., supra*.

In its opinion in *In re Jennifer A., supra*, the court relied on prior decisions from Oregon and Iowa. In *State ex rel. Juv. Dept. v. Cooke*, 88 Or. App. 176, 744 P.2d 596 (1987), the Oregon Court of Appeals held that there must be compliance with ICWA throughout a juvenile proceeding, including the adjudication stage, even though the actual court order did not place the Indian child in foster care. The Oregon Court of Appeals decision followed the Iowa Supreme Court's ruling in *In re Interest of J.R.H.*, 358 N.W.2d 311 (Iowa 1984). In that case, the Iowa Supreme Court found that a proceeding to determine whether a child is in need of assistance

due to parental unfitness could result in potential foster care placement of the Indian child and, therefore, clearly fell under ICWA.

David further argues that ICWA applies in this case because DHHS has legal custody of his children. Thus, he concludes that a removal of custody has occurred. David asserts that while the State has custody of his children, they are merely "placed" with him.

The State focuses on the text of NICWA to refute David's arguments. Neb. Rev. Stat. § 43-1504(3) (Reissue 2008) provides an Indian tribe with the right to intervene in any state court proceeding "for the foster care placement of, or termination of parental rights to, an Indian child." Further, Neb. Rev. Stat. § 43-1503(1) (Reissue 2008) provides the following definitions:

> (1) Child custody proceedings shall mean and include:
>
> (a) Foster care placement which shall mean any action removing an Indian child from [his or her] parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;
>
> (b) Termination of parental rights which shall mean any action resulting in the termination of the parent-child relationship.

Taking these two provisions together, the State contends that ICWA is appropriately applied only when it seeks foster care placement of children or termination of parental rights.

The State also highlights the U.S. Supreme Court's recent decision in *Adoptive Couple v. Baby Girl*, ___ U.S. ___, 133 S. Ct. 2552, 186 L. Ed. 2d 729 (2013), as support for its position. In that case, the Supreme Court confronted a situation where an Indian child's biological father, a registered member of the Cherokee Nation, had voluntarily relinquished his parental rights to the child's mother prior to the child's birth. The mother later placed the child up for adoption, and a non-Indian South Carolina couple began adoption proceedings. *Id*. When the biological father was apprised of the adoption, he

contested the proceedings, arguing that he believed he was only relinquishing his rights to the child's mother. *Id*. A South Carolina family court awarded custody to the father, finding that the adoptive couple had not carried the heightened burden under 25 U.S.C. § 1912(f) (2012) of proving that the child would suffer serious emotional or physical damage if the biological father was awarded custody. *Adoptive Couple v. Baby Girl, supra*.

The South Carolina Supreme Court affirmed the family court's denial of the adoption. *Id*. The court found that the biological father was a parent within the meaning of ICWA and refused to terminate the biological father's parental rights for two reasons. First, the adoptive couple had not shown that active efforts had been made to prevent the breakup of the Indian family as required by 25 U.S.C. § 1912(d). Second, the South Carolina Supreme Court concluded that the adoptive couple had not shown that the biological father's "'custody of [the child] would result in serious emotional or physical harm to her beyond a reasonable doubt.'" 133 S. Ct. at 2559, quoting *Adoptive Couple v. Baby Girl*, 398 S.C. 625, 731 S.E.2d 550 (2012).

The U.S. Supreme Court reversed the decision of the South Carolina Supreme Court. In its opinion, the majority specifically held that ICWA's active efforts requirement "applies only in cases where an Indian family's 'breakup' would be precipitated by the termination of the parent's rights." 133 S. Ct. at 2562. The Court found that the active efforts requirement did not apply in the case because there was no familial breakup due to the fact that the father had abandoned the child prior to birth.

Although it is not entirely clear from the U.S. Supreme Court's opinion how far this holding reaches, the State interprets the decision to signify that ICWA's active efforts requirement applies only to cases where the children are removed from the home. However, we conclude that the markedly different facts in this case do not lend to extending the U.S. Supreme Court's holding to the degree the State advocates. See *Adoptive Couple v. Baby Girl*, ___ U.S. ___, 133 S. Ct. 2552, 186 L. Ed. 2d 729 (2013) (Breyer, J., concurring).

David, unlike the biological father in *Adoptive Couple v. Baby Girl*, did not abandon or relinquish his rights to his children, but, rather, he has been involved with and cared for his children throughout their lives. The children have been in his custody or placement nearly all of their lives. The filing of this involuntary proceeding did result in a "breakup" of the family when the children were removed from David's custody and placed in the legal custody of DHHS.

The amici parties contend that ICWA, and specifically the active efforts requirements, applies throughout an involuntary proceeding, even if the Indian children are placed in their own home. The amici assert that the plain language of § 43-1505(4)—that "active efforts have been made to provide remedial services and rehabilitative programs designed to *prevent* the breakup of the Indian family"—logically indicates that the provision applies to situations in which the family has not yet been broken up. The amici argue that the State's reliance upon the definition of "child custody proceeding" as limited to foster care placement fails to consider the entirety of ICWA, but, rather, should be construed to apply to any involuntary state court proceeding involving an Indian child. In support of this argument, the amici note that in an involuntary juvenile proceeding, temporary foster care placement could occur at any time; that a child might be removed multiple times during the pendency of an involuntary proceeding; and that an involuntary proceeding removes an Indian parent's right to have their child returned upon demand.

The amici further argue that the provision of active efforts, and many of the other procedural protections of ICWA, would be internally inconsistent if the State's interpretation is adopted. For example, the amici point to 25 U.S.C. § 1912(a) and to Nebraska's § 43-1505(1), which require notice to the parent or Indian custodian and the Indian child's tribe of their right of intervention in any involuntary proceeding in a state court, not specifically limiting the requirement to cases where children have been placed in foster care or in which termination of parental rights is sought. Finally, the amici contend that the State's statutory interpretation would lead to an absurd

result in that ICWA, and its substantive protections, "would essentially operate as a light switch that can be turned on and off throughout the course of a juvenile proceeding filed under state law." Brief for amici curiae at 10.

In our de novo review, we conclude that the active efforts requirement contained in ICWA should have been applied to the disposition proceeding in this case and that the juvenile court erred in applying the reasonable efforts standard. We decline to accept the State's broad position that the active efforts requirement does not apply when children are placed in the parent's home in the course of an involuntary juvenile proceeding. In this case, the children were in fact removed from the home at the commencement of the involuntary proceeding. Although the children were returned to the home prior to the adjudication and disposition hearing, there remains the possibility that removal could occur again, since the case has not been dismissed and DHHS remains the legal custodian of these children. See Neb. Rev. Stat. §§ 43-279.01, 43-285, and 43-297 (Reissue 2008 & Supp. 2013) (requiring advisement that child's placement could change at any time in proceedings under Neb. Rev. Stat. § 43-247 (Supp. 2013)). Further, should the case progress to one in which foster care placement or termination of parental rights is sought, the failure to show that active efforts have been made throughout the duration of the case to prevent such an occurrence would be problematic.

In the case of *In re Interest of Louis S. et al.*, 17 Neb. App. 867, 774 N.W.2d 416 (2009), this court tacitly recognized that active efforts under ICWA are to be provided throughout a juvenile proceeding under § 43-247(3)(a). In that case, the Indian children were removed from the parents' care and ultimately their parental rights were terminated. On appeal, they challenged the court's finding that active efforts had been made to prevent the breakup of the family. In affirming this finding, we outlined the numerous services that were provided while the children were removed from the home. We further noted the services that were provided when the children were returned to the mother's care for approximately 6 months.

Finally, we discussed the services that were provided when the children were again placed in foster care. We concluded that the mother was "clearly provided with active efforts throughout this case," without distinguishing between the efforts made when the children were removed and the efforts made when the children were placed with the mother. *In re Interest of Louis S. et al.*, 17 Neb. App. at 881, 774 N.W.2d at 427.

In reaching the conclusion that active efforts should be provided during periods that placement of the children is with the parent or parents, we recognize that the active efforts required may certainly be different from those required during a period of removal from the home. As discussed by the Nebraska Supreme Court in *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008), the active efforts standard requires a case-by-case analysis. See, e.g., *In re Interest of Louis S. et al., supra* (where further rehabilitative efforts would be futile, requirement of active efforts is satisfied); *T.F. v. State, Dept. of H & S Services*, 26 P.3d 1089 (Alaska 2001); *People ex rel. D.G.*, 679 N.W.2d 497 (S.D. 2004); *In re Cari B.*, 327 Ill. App. 3d 743, 763 N.E.2d 917, 261 Ill. Dec. 668 (2002) (degree of active efforts required to prevent Indian familial breakup reduced by parent's incarceration).

Because the juvenile court erred in applying the reasonable efforts standard to its determination that returning legal custody to David would be contrary to their welfare, as opposed to the active efforts requirement contained in ICWA, we reverse the disposition order and remand the cause for further proceedings consistent with this opinion.

*Additional Assignments of Error*
*Concerning Disposition Order.*

[4] David also challenges certain provisions in the disposition order as being an abuse of discretion and not material to the adjudication. Because these issues are likely to recur upon remand, we proceed to address them. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *In re Interest of Laurance S.*, 274 Neb. 620, 742 N.W.2d 484 (2007).

*Materiality of Disposition Plan.*

David takes issue with the juvenile court's rehabilitation program's provisions as they relate to him. He argues that he was not the cause of the underlying adjudication and, therefore, should not be included in the rehabilitation plan.

[5,6] The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of the juveniles who fall within it. *In re Interest of T.T.*, 18 Neb. App. 176, 779 N.W.2d 602 (2009). The juvenile court has broad discretion as to the disposition of those who fall within its jurisdiction. *Id.* Juvenile courts have broad discretion to accomplish the purpose of serving the best interests of the children involved. *Id.*

[7,8] A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is within the Nebraska Juvenile Code. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013). While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child. *Id.*

[9,10] In analyzing the reasonableness of a plan offered by a juvenile court, the Nebraska Supreme Court has noted that the following question should be addressed:

"Does a provision in the plan tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska Juvenile Code? An affirmative answer to the preceding question provides the materiality necessary in a rehabilitative plan for a parent involved in proceedings within a juvenile court's jurisdiction. Otherwise, a court-ordered plan, ostensibly rehabilitative of the conditions leading to an adjudication under the Nebraska Juvenile Code, is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures. Similar to other areas of law, reasonableness of a rehabilitative plan for a parent

depends on the circumstances in a particular case and, therefore, is examined on a case-by-case basis."
*Id*. at 779, 829 N.W.2d at 449, quoting *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987).

The material issue of this juvenile adjudication was Danielle's inappropriate discipline of Shayla. In fact, during the disposition hearing, the juvenile court noted that its orders were "going to be focused on the reason the Court took jurisdiction, which was the inappropriate discipline by [Danielle] of Shayla." Therefore, we must determine whether the court's nine-part rehabilitation plan related to David is reasonable based on the circumstances of the case. After our de novo review, we conclude that only certain provisions of this plan are reasonable. We disapprove of the remaining provisions.

Because David and his children live together with Danielle and her children, any juvenile court plan aimed at correcting the underlying reason for the adjudication will inevitably require some measure of cooperation from David. Therefore, the rehabilitation plan provisions requiring David's cooperation with DHHS services are reasonable, because they allow DHHS the opportunity to work at correcting the reason for the adjudication. Specifically, we approve the plan's provisions that require David to cooperate with

> a. [DHHS] and service providers in his home.
> b. . . . all drop-in services as arranged by [DHHS] and allow access to [his] children and the family home at all times.
> . . . .
> f. . . . family therapy as arranged by [DHHS].

Additionally, we find provision d., that David not use any unapproved form of physical discipline or place any child in a closet, and provision i., that David ensure that the children have adequate adult supervision at all times when they are in his care, to be material to this case. Even though David was not found to have used improper discipline on his children, ensuring that the children have adequate adult supervision and setting a proper example in the household regarding discipline are material to ameliorate the underlying reason for the

adjudication; namely, that inappropriate discipline had occurred when he was not home supervising the children.

Although we agree with the above provisions of the court's plan, we find that the remaining provisions are not material. The underlying reason for the adjudication was Danielle's inappropriate discipline of Shayla. The provisions that David refrain from discussing the children's mother (c.); provide the children access to mental health care (e.); schedule and attend his children's medical, dental, and vision examinations (g.); and schedule an appointment for Shania's speech and language evaluation (h.) are not material to the adjudication. Though these provisions may be good practices for David to follow as a father to three minor daughters, there is no evidence in the record that David's adherence to these provisions will correct Danielle's use of improper discipline.

To summarize, based on the circumstances of the present case, we approve of the plan's provisions requiring David to cooperate with DHHS' efforts in this case, restricting him from using unapproved physical discipline on his children, and requiring him to ensure the children have adequate adult supervision. However, we find the remainder of the plan's provisions to be unreasonable, because they are immaterial to the underlying reason for the adjudication. We therefore affirm the provisions in the order which we find to be material and reverse the provisions which we find to be immaterial to the reason for the adjudication.

*Change in Family Therapist.*

A substantial portion of the short disposition hearing in this case related to DHHS' request to change the family therapist. David opposed this change at the hearing and on appeal assigns error to the change in the therapist. He argues that the juvenile court should not have authority to "'micro-manage'" this case and claims that the evidence at the hearing did not support such a change. Brief for appellant at 20. He also argues that such a change was not material to the reason for adjudication in this case.

David's family has been involved with the juvenile court for an extended period of time that began with a prior case. For

the entirety of this time, the family has worked with the family therapist, Crayne. During therapy with Crayne, the family has formed a bond with her and she became a valuable support. However, DHHS believed that the children still displayed behavioral issues that had not been sufficiently addressed. Thus, DHHS recommended a change in the therapist and the juvenile court accepted this recommendation.

While the basis of the adjudication was a specific instance of inappropriate discipline of Shayla by Danielle, the juvenile court stated in the adjudication order:

> Because of the significant behavioral challenges presented by Shayla and her sisters Shania and Tanya, together with the fact that [Danielle], as their custodian, is their primary adult caretaker in charge of their discipline during their waking hours, the Court finds that all three children are at risk of harm as a result of [Danielle's] inappropriate physical discipline of Shayla on the 16th of January, 2013.

Thus, while the children's behavioral issues were not specifically listed in the juvenile petition, such issues are related to the reason for the adjudication. We find that the court's order requiring a change in the family therapist was reasonable under the circumstances of this case. Having the children's behavioral issues addressed from a new perspective may allow for the necessary progress to have this case reach a stage where it can be closed. We conclude that the juvenile court did not abuse its discretionary power in requiring the change in the therapist.

## CONCLUSION

The juvenile court erred in failing to apply the active efforts standard set forth in ICWA to the disposition order. Additionally, the juvenile court erred, as outlined above, when it adopted certain provisions in its rehabilitation plan which are not material to the underlying reasons for the adjudication. We also conclude that the juvenile court did not err in permitting a change in the family therapist.

Affirmed in part, and in part reversed and remanded for further proceedings.